# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5734 | **DATE** | 6/14/2001 |
| **CASE TITLE** | Williams vs. Valtierra | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the prosecutors' motion to dismiss is denied (17-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUN 1 8 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | date mailed notice | |
| OR | courtroom deputy's initials | 01 JUN 15 AM 11:54 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOROTHY JEAN WILLIAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 00 C 5734 |
| | ) | |
| JOHN VALTIERRA, KAREN KERBIS and JACOB RUBINSTEIN | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dorothy Jean Williams has sued a police officer and two prosecutors, alleging that her constitutional rights were violated. The prosecutors, Karen Kerbis and Jacob Rubinstein, have moved to dismiss. The motion is denied.

## FACTS

According to the complaint, Chicago Police Officer John Valtierra arrested Williams (a/k/a Felecia Jones) on September 17, 1998 on the south side of Chicago. It is unclear from the complaint why Williams was arrested. While transporting Williams to the police station, Valtierra allegedly said that he would "let you go from here if you take care of me and my partner." Williams alleges that by this statement, Valtierra was saying that she would be free to go if she performed oral sex on Valtierra and his partner.

Williams angrily refused the offer. At the police station, she says, Valtierra assaulted her,

1



choked her, threw her to the ground, and kicked her in the stomach. Williams asked for medical attention and permission to use a toilet. Both requests were denied. Despite lengthy interrogations by detectives, Williams refused to speak.

Several hours later, Assistant State's Attorney Karen Kerbis, who was assigned to the Office's Felony Review Unit, appeared on the scene. According to the complaint, Kerbis presented Williams with a statement in which Williams confessed to assaulting Valtierra. She asked Williams to sign it. Williams told Kerbis that she had been beaten and repeated her requests for medical attention and toilet privileges. Williams claims Kerbis responded that she would get neither unless she signed the confession. Jacob Rubinstein allegedly assisted in the preparation of the statement, and the complaint alleges that he was present during part of the interrogation.

This colloquy continued for some time along the same general lines. Eventually, Williams signed the confession and was transported to a hospital. After a jury convicted Williams of aggravated battery in August 2000, a judge sentenced her to 30 months of probation and 30 days of community service. Williams' appeal from her conviction was filed in September 2000 and is currently pending before the Illinois Appellate Court.

Williams brought suit in this Court on September 18, 2000, alleging violations of 42 U.S.C. § 1983 by Valtierra, Kerbis and Rubinstein.

## DISCUSSION

Kerbis and Rubinstein (the prosecutors) have brought a motion to dismiss for failure to state a claim. FED. R. CIV. P. 12(b)(6). This Court will therefore accept as true Williams' well-pleaded

allegations. *Albright v. Oliver*, 510 U.S. 266, 268 (1994).[1] Dismissal at this stage of litigation is appropriate only if it appears beyond doubt that Williams can prove no set of facts in support of her claim that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957).

The prosecutors raise three points in support of dismissal. First, they claim absolute immunity from civil suits arising from their evaluation and approval of criminal charges. Defendant's Motion to Dismiss at 3 (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)). Second, the prosecutors claim that Williams cannot sue them for denial of medical care because they never held her in custody. *Id.* And finally, the prosecutors claim that because Williams' conviction has not been overturned, vacated, or otherwise invalidated, her entire lawsuit is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that federal lawsuits challenging the legality of state convictions are not cognizable under § 1983, given the availability of federal habeas corpus as the exclusive avenue of relief for unconstitutional confinement.

The prosecutors' first argument fails. Williams is not complaining that they wrongfully evaluated the evidence and charged her with a crime. Their decision whether to bring charges is, of course, protected by absolute immunity. *Imbler*, 424 U.S. at 431 ("We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). Prosecutors' work in preparation for trial or initiation of criminal

---

[1] The prosecutors submitted documents relating to the state criminal proceedings, including a lengthy transcript, but this Court cannot consider "matters outside the pleading," *see* Rule 12(b), without converting the motion to dismiss into a summary judgment motion under Rule 56 and giving Williams the opportunity to respond. *See* 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE §1366 (2d ed. 1990). These documents evidently pertain to the prosecutors' argument that *Heck v. Humphrey* requires dismissal of the case against them. There is no reason to convert the motion to a summary judgment motion because the transcripts would have no bearing on our ruling.

3

proceedings, including "obtaining, reviewing, and evaluating of evidence," is also absolutely protected. *Id.* at n. 33; *Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997) (applying absolute immunity to a prosecutor who "reviewed the police records, interviewed the parties involved, and then passed on his assessment of the case to his superior"). This absolute immunity flows from a prosecutor's quasi-judicial role as an officer of the court; if a prosecutor acts wrongfully as an administrator or investigator, she is protected by no more than qualified immunity. *See Houston v. Partee*, 978 F.2d 362, 365 (7th Cir. 1992).

Williams claims that when the prosecutors arrived, they did not evaluate information but rather forced Williams to produce inculpatory information by denying her medical care. In so doing, Williams says, the prosecutors were acting in the role of investigators/interrogators and thus are not entitled to absolute immunity.

Based on what the complaint alleges, the Court agrees. Kerbis and Rubinstein are protected by no more than qualified immunity. *See, e.g., Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995) (denying absolute immunity to a prosecutor who allegedly intimidated and coerced witnesses into changing their testimony; such conduct was investigatory, not advocacy); *Buckley v. Fitzsimmons*, 20 F.3d 789, 794 (7th Cir. 1994) (noting that "[c]oercing witnesses to speak, rather than loosening their tongues by promises of reward, is a genuine constitutional wrong . . . ."); *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1244 (7th Cir. 1990) ("A prosecutor could be liable for depriving a suspect of food and sleep during an interrogation, or beating him with a rubber truncheon, or putting bamboo shoots under his fingernails."), *vacated and remanded on other grounds*, 502 U.S. 801 (1991); *Thomas v. Riddle*, 673 F.Supp. 262, 264 (N.D. Ill. 1987) (denying absolute immunity to prosecutor who allegedly participated in a twelve-hour marathon interrogation of suspect).

4

The prosecutors cite to *Hunt v. Jaglowski*, 926 F.2d 689 (7th Cir. 1991), for support of their argument that taking statements from defendants is a prosecutorial function that is protected by absolute immunity. In that case, a criminal defendant sued police officers and prosecutors, alleging excessive force, excessive detention, and other claims. *Hunt* does not require dismissal based on absolute immunity in Williams' case, as this quotation makes clear:

> "Hunt testified [at trial] that over the course of the 30-hour detention he was repeatedly interrogated by rotating teams of the police officers, that he was beaten by some of the police officers, that he was given little food or water, that he was chained to a wall, and was deprived of sleep. The government disputed this testimony. Hunt also testified that he told Assistant State's Attorney Petrocelli that he had been beaten, that he had not been allowed to see his lawyer, that he had been deprived of food and water, and that his confession had been coerced. Further, Hunt stated that he showed Petrocelli several bruises on his body and that Petrocelli responded that there was nothing he could do because he was just there to take Hunt's statement. At this time, Hunt stated that Petrocelli left the interrogation room and one of the police officers re-entered the room, accused him (Hunt) of 'telling on him' and threatened to resume the beatings. Hunt admitted that at this point he agreed to make a confession after which Petrocelli came back into the room."

*Id.* at 691-92. The trial judge granted Petrocelli's motion for a directed verdict at the close of the plaintiff's case, and the Seventh Circuit affirmed, noting that, even under the plaintiff's version of the hotly disputed facts, the prosecutor's role was "merely to review, approve or disapprove, and issue the charges the police were seeking." *Id.* at 693. The prosecutor "did not engage in investigative or administrative activities or the alleged coercion by the police officers. . . ." *Id.* In short, *Hunt* does not accord prosecutors with absolute immunity for interrogation-related activity; rather it held that the prosecutor in that case had not participated in the alleged coercion.

In Williams' case, by contrast, the prosecutors are alleged to have actively engaged in coercing a false confession and denying medical treatment. Those two claims, if true, do not constitute quasi-judicial prosecutorial activity protected by absolute immunity. "If the function was

5

administrative or investigatory, the prosecutor enjoys only qualified immunity." *Id.* at 692 (quoting *Henderson v. Lopez*, 790 F.2d 44, 46 (7th Cir. 1986)).

Similar authority relied upon by the prosecutors is likewise inapposite. In *Spiegel*, absolute immunity was appropriate for a prosecutor who merely reviewed evidence collected by the police and made recommendations to his superiors. *Spiegel*, 121 F.3d at 257. The case did not concern a claim against prosecutors for their actions in interrogating a suspect. In view of the Supreme Court's admonition that absolute immunity should not be extended "any 'further than its justification would warrant,'" *Burns v. Reed*, 500 U.S. 478, 487 (1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982)), this Court declines to hold that prosecutors can join coercive interrogations as active participants and be absolutely shielded from civil liability. *Accord, Rex v. Teeples*, 753 F.2d 840, 844 (10th Cir. 1985) (citing cases where prosecutors performed police-type functions and were denied absolute immunity). To do so would improperly put the focus on the position an official holds, not the task she performs, and it would result in police officers being held liable for activity that prosecutors could perform with impunity. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)).

The prosecutors' second protest is that the police held Williams in custody, so only the police can be liable for denial of medical treatment. They argue that "the State's Attorney is not a jailor," Defendant's Reply Brief at 8, and they cite for support the recent decision in *Anderson v. Simon*, 217 F.3d 472, 476 (7th Cir. 2000), *cert. denied*, 121 S.Ct. 765 (2001). In *Anderson*, a widow brought suit under § 1983 after her husband died in police custody. She alleged that the prosecutors were

liable for dragging their feet in bringing charges – a claim promptly thrown out under *Heck* – and for ordering police to hold the suspect overnight in order to arrange a line-up. The court affirmed the dismissal of the second claim, noting that the plaintiff did "not allege that the police were under any duty to follow a state's attorney's orders or suggestions. The police, not the state's attorney's office, decide whether to detain an individual following arrest but prior to formal charging." *Id.*

The question whether Kerbis and Rubinstein were deliberately indifferent to Williams' serious medical needs is analytically distinct from the holding in *Anderson* that the excessive detention in that case was not the responsibility of the prosecutors.[2] The Supreme Court noted in *Estelle v. Gamble* that "regardless of how evidenced," denial of medical treatment is actionable under § 1983 "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." 429 U.S. 97, 104-05 (1976) (footnotes omitted). A citizen must be in custody to assert a denial of medical treatment claim, but liability for such claims is not limited to only those officials who have ultimate power to release or detain the citizen. Prison doctors, for example, do not maintain custody over prisoners, but under *Estelle v. Gamble* they may be liable for denial of medical treatment. Williams claims that the prosecutors prevented her from obtaining medical care, not that they kept her in custody unlawfully.

The prosecutors' final argument is that Williams cannot sue under § 1983 because her conviction has not been reversed or otherwise expunged. The Supreme Court held in *Heck v. Humphrey* that "in order to recover damages for allegedly unconstitutional conviction or

---

[2] This second argument also fails to rebut the independent constitutional wrong of coercing a confession. *See Buckley*, 20 F.3d at 794.

7

imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been" overturned. 512 U.S. at 486-87. This Court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If a successful resolution "will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original) (footnotes omitted). The prosecutors note that Williams' criminal conviction is currently on appeal and they suggest that for her to prevail on her § 1983 lawsuit, this Court "would have to hold that the state proceedings deprived the plaintiff of her constitutional rights and that the conviction should not have occurred." Reply Brief at 9.

The prosecutors have failed to show that such a result would flow from a successful prosecution of this civil complaint. The Supreme Court in *Heck* did not rule out any and all § 1983 lawsuits that arise from the same factual milieu as an unsettled criminal conviction. The key language is "actions whose unlawfulness would render a conviction or sentence invalid." *Id.* If this case proceeds all the way to trial and a jury finds that the prosecutors wrongfully denied medical care in violation of Williams' constitutional rights, that verdict would not invalidate, or even undermine, Williams' criminal conviction for aggravated battery of a peace officer. The elements of aggravated battery are (1) intentionally or knowingly making physical contact of an insulting or provoking nature; (2) knowing that the individual harmed is a peace officer; and (3) knowing that the officer is engaged in official duties including arrest. *See* 720 ILCS 5/12-3(a)(2) - 4(b)(6) (West 1996); *Illinois v. McGaughy*, 313 Ill.App.3d 656, 660, 730 N.E.2d 127, 131 (2000). None of those elements is in any way related to what Williams must prove to succeed on her denial of medical treatment claim: that the prosecutors were deliberately indifferent to her serious medical needs. *See Estelle*,

8

429 U.S. at 105; *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Proving the denial of medical treatment would not invalidate the conviction for aggravated assault. *See, e.g., Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996) (noting that "one can have a successful wrongful arrest claim and still have a perfectly valid conviction").[3]

The prosecutors cite *Anderson v. County of Montgomery*,[4] 111 F.3d 494, 499 (7th Cir. 1997), but in that case it was beyond dispute that the plaintiff was attacking his conviction. The plaintiff even conceded that point. *Id.* Furthermore, the allegation in that case (that a prosecutor, defense attorney, and court reporter fabricated a guilty plea) was so outrageous that the district court fined the plaintiff's attorney for filing frivolous claims. Those charges are nothing like an allegation that prosecutors prevented or delayed a suspect from receiving medical treatment.

As for the coerced confession claim against the prosecutors, *Heck* does not operate as a bar to that claim either. "The fact that some evidence used in a trial is tainted by illegality does not necessarily undermine the conviction, given the presence of other evidence and the limitations of the exclusionary rule." *Apampa v. Layng*, 157 F.3d 1103, 1105 (7th Cir. 1998) (opining that *Heck* would not apply to bar actions under Title III, the federal wiretapping statute, that "need not challenge the conviction"), *cert. denied*, 528 U.S. 908 (1999). The Eighth Circuit has held that "this reasoning should be extended to Fifth Amendment claims challenging the voluntariness of

---

[3] Though the prosecutors attached to their motion a copy of the transcript of the motion to suppress her confession that Williams filed in the criminal case, as well as the trial court's ruling denying that motion, they do not argue that Williams' claim is barred by issue preclusion.

[4] The Seventh Circuit overruled the core holding of *Anderson* in *DeWalt v. Carter*, 224 F.3d 607, 617-618 (7th Cir. 2000), but not the section pertinent to this case. *Anderson* held that § 1983 lawsuits are rendered non-cognizable by *Heck* even when the plaintiff has no possible recourse under 28 U.S.C. §2254; *DeWalt* distinguished such cases from the rule of *Heck*, holding that "where habeas is not applicable, the requirements of the habeas statute do not supersede the explicit right to proceed under § 1983." *DeWalt*, 224 F.3d at 617.

9

confessions," given that harmless error would protect the finality of criminal convictions. *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996). The Court agrees, especially in a case such as this, where it appears there was other evidence to support Williams conviction, *e.g.*, the testimony of the police officers.

## CONCLUSION

The prosecutors' motion to dismiss [17-1] is denied.

Dated: June 14, 2001

MATTHEW F. KENNELLY
United States District Judge